McIlvaine, J.
The first ground of objection to a peremptory writ of mandamus is, that the statute in question, not having been passed by the vote of two thuds of the members elected to each branch of the general assembly, is in contravention of section 29, article 2, of the constitution. The pro *5 vision, of the constitution is a follows : “No extra compensation shall be made to any officer, public agent, or contractor, after the service shall have been rendered,_ or the contract entered into ; nor shall any money be paid on any claim, the subject matter of which shall not have been provided for by pre-existing law, unless such compensation or claim be allowed by two thirds of the members elected to each branch of the general assembly.” The contention on the part of the defendant is, that the statute is in violation of the second clause of the above provision.
• The money intended to be appropriated by the act was not in payment of any claim against the state within the meaning of this provision. In the judgment of the general assembly this enactment was passed in the discharge of the duty imposed upon it by section 7 of article 1 of the constitution ; namely, to pass suitable laws to encourage schools and the means of instruction. The Ohio University, an institution of learning, had no claim, in the nature of a debt, against the state, for which payment was demanded; but, being without means to make necessary repairs upon the buildings of the University, she solicted aid from the state, which the general assembly granted, not by way of paying a claim, but as giving generous aid to a needy and worthy institution of learning. There is no constitutional objection to the statute. See Ohio ex rel. v. Oglevee, emte, where the the same principle was applied to sustain an appropriation in favor of Longview'Asylum.
2. That there did not exist in the state treasury, at the date of said act, or now, a fund to which the said appropriated sum of $20,000 could or can be added, except an irreducible fund, the interest of which is payable annually to the university. This objection does not interfere with the reasonable and proper execution of the statute. If the general assembly was mistaken concerning the state of the funds in the treasury, the intention to appropriate the sum named in the statute and for the purpose named, is nevertheless clear. The intention was not to create or to increase an irreducible fund in the treasury, the interest of which alone should be paid to the University, but to donate the sum of $20,000 in ggroesenU, for the purpose of' making repairs now needed on the buildings of the university ; *6 and it would be unreasonable to hold that the institution should lose the proffered bounty, because, unfortunately, it did not possess other means to which this might be added.
3. The third objection is, that there are no moneys in the treasury subject to an appropriation for the purpose named in the act. It is not said or meant that there are no funds in the treasury not otherwise appropriated, but, that, under section 5 of article 12 of the constitution, which provides that “no tax shall bo levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied,” no money in the treasury, though not otherwise appropriated, can be applied to this purpose, for the reason that no tax has been levied or collected for such purpose.
Unappropriated moneys were in the treasury, levied and collected under the act of March 26, 1879 (76 Ohio L. 42), which provides:
“ That there shall be levied annually, taxes for state purposes, on each dollar of valuation of taxable property, as follows:
“ For general revenue purposes, being the expenses of the state, the benevolent, charitable, penal and reformatory institutions, for the payment of such other charges as may be made by law, and for reimbursing the sinking fund such sums as have been transferred from that fund, one mill and four tenths of one mill, the samé to be styled the £ revenue fund.’ ”
Now, it is contended that, under the constitutional provision above quoted, none of the funds raised under the above statute can be applied to the payment of relator’s demand. If it were conceded that the phrase “for the payment of such other charges as may be made by law',” is too indefinite to have operation under the provision of the constitution above quoted, and that the “ benevolent and charitable ” institutions referred to ir. the statute are such only as are owned by the state, still we think that taxes levied and collected for “ the expenses of the state,” may be appropriated by the legislature for the purposes named in the act under which relators claim. The object expressed by the words “ the expenses of the state,” are sufficiently definite, and except as limited by other clauses in *7 the act, -would embrace the whole “ revenue fund,” and a gratuity, which the state may properly bestow, is, reasonably and literally, an expense of the state, and within the object of taxation so designated.
4. The last objection is, that the statute in question does not make an appropriation of money in the state treasury from which a payment would be authorized. Although very loosely drawn, we think there can be no doubt but that the legislature intended to set apart and appropriate, of the moneys in the treasury and not otherwise appropriated, the sum of $20,000 to be paid to the Ohio University for the purpose of making repairs of the buildings of the university.

Peremptory writ cmwrded.